Rouse, J.
This case arises out of a transaction in which the plaintiff, Fanaras Enterprises, Inc., lent money on an unsecured basis to the defendant Roger Allen Doane (Doane), who, at the time, was plaintiffs attorney on unrelated matters. When Doane failed to repay the loans, the plaintiff filed this action against him and the Law Offices of Roger Allen Doane (collectively referred to as the defendants) alleging negligence with regard to the loans and another transaction. Doane’s malpractice insurer, First State Insurance Company (First State) filed an intervenor’s complaint, seeking a declaration that there is no coverage for the plaintiffs claims under Doane’s professional liability policy because the claim was not first made and reported during the policy period. The matter is now before the court on First State’s motion for summary judgment and on the plaintiffs cross-motion for summary judgment on the grounds that the notice provisions of the policy have been complied with and that First State is required to defend and indemnify Doane.
BACKGROUND
Based on the affidavits and exhibits filed by the parties, the undisputed material facts are as follows. Joseph Fanaras (Fanaras) is the president, treasurer and sole stockholder of Fanaras Enterprises, Inc. which is engaged in the business of construction. In late 1982 or 1983, Fanaras retained Doane, an attorney who was at the time duly licensed in Massachusetts, as counsel for Fanaras Enterprises.[2]
Between August 20, 1986 and August 7, 1987, Fanaras lent substantial sums of money to Doane on an unsecured basis. The purpose of the loans was for construction work on property owned by Doane, as well as for a medical business venture in which Doane was engaged. Doane never offered to grant Fanaras a mortgage as security for the loans, nor were there any written loan agreements or promissoiy notes evidencing the indebtedness. Doane orally promised to repay the monies plus interest at a rate of eleven percent. Doane told Fanaras that he would repay the money when he mortgaged or sold property he owned in Newburyport. Doane failed to repay the loans. As of November 20, 1987, Doane owed Fanaras Enterprises the sum of $421,035.08.
OnAugust27,1987, the plaintiff first filed a lawsuit against Doane (Essex Superior Court Action No. 87-1882), seeking repayment of the loans that are at issue in this case and alleging a claim under G.L.c. 93A. Doane retained personal counsel in that matter.
On November 25, 1987, Fanaras Enterprises filed this action against the defendants. Count I alleges that the defendants were negligent in failing to (1) advise the plaintiff to secure the loans; (2) advise the plaintiff to seek independent legal advice; (3) advise the plaintiff of Doane’s intention to put substantial liens on Doane’s property; and (4) protect the plaintiffs interest when Doane mortgaged his property. Count II alleges that the defendants were negligent in failing to advise the plaintiff to secure a promissory note granted by it to another party and in failing to protect the plaintiffs interest with regard to that transaction.
The First State Policies
On or about October 25, 1986, First State issued a lawyer’s professional liability policy (the 1986/1987 policy) to Doane for the policy period October 25, 1986 to October 25, 1987 (No. LP23943). This policy was issued through First State’s authorized broker, Frank B. Hall & Company of Massachusetts (Hall). In October 1987, Doane submitted a renewal application to Hall, which then issued a policy (1987/1988 policy) for the period October 25, 1987 to October 25, 1988. On the renewal application, Doane indicated that a lawsuit was pending against him by Fanaras for money owed, but Doane indicated that no claim would be made under the 1986/1987 policy. In reliance on Doane's disavowal of any coverage for the Fanaras claim and another first made in 1987, First State renewed Doane’s policy automatically and without a surcharge that would have doubled his premiums. The 1987/1988 policy was later cancelled for non-payment of premium.
Both policies are “claims-made” policies. The 1986/1987 policy provides:
Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured and reported to the Company while the policy is in force.
The policy defines “claim” as “a demand received by the insured for money or services including service of suit or institution of arbitration proceedings against the insured.”
The 1986/1987 policy provided, in pertinent part, that the insured was required to give written notice as soon as practicable after “becoming aware of any act, error or omission which could reasonably be expected to be the basis of a claim or suit. . .” The policy also provides that a “claim shall be considered to be reported to the Company when the Company, or its authorized agent, first receives written notice of the *146 claim or an event which could reasonably be expected to give rise to a claim.”
Doane was served with process on the first Fanaras suit on September 1, 1987. By letter dated September 23, 1987, counsel for Fanaras informed Hall and First State of the plaintiffs claims against the defendants. On two occasions prior to October 25, 1987 (the expiration date of the 1986/1987 policy), Hall wrote to Doane, inquiring whether he intended to report the Fanaras claim under the First State Policy, but Hall received no response. Doane made no request for defense or indemnification from First State prior to the expiration of the 1986/1987 policy on October 25, 1987. OnMay21, 1993, more than five years after the claim was first made, Doane wrote to First State requesting that the company assist in his defense of the Fanaras claim by providing him with an attorney.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuinely disputed material fact in order to defeat the motion. Pederson, supra at 17.
The 1986/1987 policy is a “claims-made” policy. Such a policy covers the insured for claims made during the policy year and reported within that period regardless of when the covered act or omission occurred. Chas. T. Main, Inc. v. Fireman’s Fund Ins. Co., 406 Mass. 862, 864 (1990). Thus, in order for coverage to exist under the 1986/1987 policy, the plaintiffs claims had to have been made against Doane and reported to First State prior to October 25, 1987, the expiration date of the policy.
Both the plaintiff and First State agree that the claims against Doane were first made during the 1986/1987 policy year.[3] Thus, the salient inquiry is whether the claims were reported to First State during the 1986/1987 policy period in accordance with the notice provisions of the policy. First State asserts that because Doane himself did not report the Fanaras claim during the 1986/1987 policy year, the notice requirements of the policy were not met, even though First State had knowledge of the claims against the defendants. The plaintiff asserts that the notice requirement was satisfied by the letter of September 23, 1987 from plaintiffs counsel.
In this case, Doane failed to give written notice of the plaintiffs claims to First State and he failed to respond to two written requests by a Hall claims supervisor inquiring whether Doane wished to report the plaintiffs demand as a claim trader the 1986/1987 policy. Doane never requested defense or indemnification from First State until 1993. Moreover, in response to a question on his policy application renewal form requesting “full particulars” about any claims or suits, Doane indicated that a suit had been filed against him but stated, “No claim, suit for money owed, no claim will be made.”
An insured’s failure to notify his insurer of a claim against him within the policy period of a claims-made policy precludes coverage. National Union Fire Ins. Co. v. Talcott, 931 F.2d 166, 168 (1st Cir. 1991). A claims-made policy requires strict compliance with the notice provision. Id. An insurer has no duty to defend an insured absent a request by the insured to do so. Detroit Automobile Inter-Ins. Exchange v. Higginbotham, 95 Mich.App. 213, 218-19, 290 N.W.2d 414, 417 (1980). “An insurer’s obligations trader an insurance contract are ordinarily triggered when the insured or someone’s action on the insured’s behalf tenders the defense of an action potentially within the policy coverage.” Institute of London Underwriters v. Harford Fire Ins. Co., 234 Ill.App.3d 70, 73, 599 N.E.2d 1311, 1313 (1992).
Additionally, the fact that plaintiffs counsel notified First State does not satisfy the notice requirement. “Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy’s coverage coupled with knowledge that the insurer’s assistance is desired .. . An insurance company is not required to intermeddle officiously where its services have not been requested.” Hartford Accident and Indemnity Co. v. Gulf Ins. Co., 776 F.2d 1380, 1383 (7th Cir. 1985) (citations omitted).
Furthermore, with regard to claims-made policies, the Supreme Judicial Court has stated that “fairness in rate-setting is the purpose of a requirement that notice of a claim be given within the policy period . ..” Chas. T. Main, supra at 864. In this case, Doane indicated to First State on the policy renewal application that he would make no claim under the 1986/1987 policy regarding the Fanaras lawsuit. In reliance on the information in the renewal application, First State renewed the policy without a premium surcharge. It would be patently unfair to allow an insured to disclaim coverage, thereby securing a favorable premium for the next policy year, and then require the insurer to provide coverage because the insurer had knowledge from another source of the *147 claim pending against the insured. Thus, Doane’s failure to report plaintiffs claims to First State and to make a demand for defense within the 1986/1987 policy period precludes coverage under that policy.
Moreover, assuming arguendo that the notice provisions of the policy had been met, count I of the plaintiffs complaint does not fall within the purview of coverage. The policy provides coverage only for claims against the insured “arising out of any act, error, or omission of the Insured in rendering or failing to render professional services for others in the Insured’s capacity as a lawyer...” The policy excludes from coverage “any claim made by or against or in connection with any business enterprise'. . . which is owned by any Insured or in which any Insured is a partner or employee ... or which is directly or indirectly controlled, operated or managed by any insured . . .” It is undisputed that the loans from the plaintiff to Doane were for Doane’s business ventures. According to Fanaras’s deposition testimony, Fanaras loaned Doane monies for the development of properties in Newbuiyport and Salisbury, as well as for other business endeavors, including the development of a medical complex. Fanaras also testified that he continued to loan Doane money in 1986 and 1987, despite allegations that Doane failed to repay other creditors, in order to prevent Doane’s creditors from foreclosing on the Salisbury property and to prevent Doane from being forced into bankruptcy. Fanaras testified, “I was in so deep I couldn’t get out.” The plaintiff argues that the claims are covered by the policy because an ongoing attorney-client relationship existed between Doane and Fanaras. The plaintiff asserts that Doane had a duty to advise the plaintiff to secure the loans or to obtain independent counsel, and that Doane’s failure to do so constitutes legal malpractice.
Merely because Doane represented the plaintiff in other matters does not mean that he undertook to represent Fanaras with regard to the personal business loans at issue here. “[T]he fact that an attorney agreed to, or did, represent a client in a particular matter does not necessarily create an attorney-client relationship as to other affairs of that client.” Robertson v. Gaston-Snow & Ely Bartlett, 404 Mass. 515, 522 (1989); DeVaux v. American Home Assurance Co., 387 Mass. 814, 816 n.6 (1983). There is no evidence that Doane agreed to represent Fanaras with respect to the loans at issue or that any attorney-client relationship existed between them with respect to the loans. Therefore, Doane owed no duty to provide legal counsel concerning these transactions. The loans were made to further Doane’s business enterprises and the plaintiffs claims in count I arising out of Doane’s failure to repay the loans are not within the coverage of the policy.
ORDER
Based on all of the foregoing, it is hereby ORDERED that intervenor First State Insurance Company’s motion for summary judgment be ALLOWED. It is further ORDERED that the motion for summary judgment of the plaintiff Fanaras Enterprises, Inc. be DENIED.
It is further DECLARED that there is no coverage under policy number LP23943 issued to Roger Allen Doane by First State Insurance company for each of the claims asserted by the plaintiff Fanaras Enterprises in this matter.

 Doane has since resigned from the Massachusetts Bar and is incarcerated in federal prison having been convicted on charges of bank fraud in matters unrelated to this action.

 Because the claims alleged in count I of this lawsuit arise out of the same acts, errors or omissions as the claims asserted against Doane in the previously filed lawsuit, the parties agree that the claims at issue were first made during the 1986-1987 policy period.