IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0598
════════════
Prodigy Communications 
Corp., Petitioner,
 
v.
 
Agricultural Excess & 
Surplus Insurance Company, n/k/a Great American E & S Insurance Company and 
Great American Insurance Company, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 1, 
2008
 
 
            
Chief Justice 
Jefferson delivered the 
opinion of the Court, joined by Justice 
O’Neill, Justice Wainwright, Justice Brister, Justice Medina, and Justice Green.
 
            
Justice Wainwright delivered a concurring opinion.
 
            
Justice Johnson delivered a dissenting opinion, joined 
by Justice Hecht and Justice Willett.
 
 
            
In PAJ, Inc. v. The Hanover Insurance 
Co., 243 S.W.3d 630, 636-37 (Tex. 2008), we held that “an insured’s failure 
to timely notify its insurer of a claim or suit does not defeat coverage if the 
insurer was not prejudiced by the delay.” PAJ involved an 
occurrence-based commercial general liability (“CGL”) policy with a 
prompt-notice provision that required the insured to notify the insurer of 
“an occurrence or an offense that may result in a claim ‘as soon as 
practicable.’” Id. at 
631-32. Noting that “the timely notice provision was not an essential 
part of the bargained-for exchange under PAJ’s 
occurrence-based policy,” we held that PAJ’s untimely 
notice did not defeat coverage in the absence of prejudice to the insurer. 
Id. at 
636-37.
            
Today, we decide whether PAJ’s 
notice-prejudice rule applies to a claims-made policy when the notice provision 
requires that the insured, “as a condition precedent” to its rights under the 
policy, give notice of a claim to its insurer “as soon as practicable . . ., but 
in no event later than ninety (90) days after the expiration of the Policy 
Period or Discovery Period.” The parties dispute whether notice of the claim was 
given “as soon as practicable” but agree that the insured gave notice within the 
ninety-day cutoff period. The insurer also admits that it was not prejudiced by 
the delayed notice.
            
For the reasons explained below, we conclude that “notice as soon as 
practicable” was not an essential part of the bargained-for exchange under the 
claims-made policy at issue here. Following PAJ, we hold that, in the 
absence of prejudice to the insurer, the insured’s alleged failure to comply 
with the provision does not defeat coverage. See id. Because the 
court of appeals held otherwise, 195 S.W.3d 764, 768, we reverse its judgment, 
render judgment that the insurer may not deny coverage based on the fact that 
notice was not given “as soon as practicable,” and remand the remaining issues 
to the trial court.
I
Factual 
Background
 
            
Prodigy Communications merged with FlashNet 
Communications in May 2000. At the time of the merger, FlashNet was insured under a claims-made “Directors’ and 
Officers’ Liability Insurance Policy Including Company Reimbursement” issued by 
Agricultural Excess & Surplus Insurance Company (AESIC).[1] In exchange for a $19,519 premium, the 
policy covered losses resulting from certain “claims first made” against FlashNet[2] and its directors and officers during the 
policy period of March 16, 2000 to May 31, 2000. In anticipation of its merger 
with Prodigy, FlashNet purchased a 3-year “Discovery 
Period” which, in exchange for a $93,750 premium, extended coverage under the 
policy to any “claims first made” against the Insureds 
between May 31, 2000 and May 31, 2003.[3]
            
The policy contained the following amended[4] “notice of claim” provision:
 
The [Insureds] shall, as a condition precedent to their rights 
under this Policy, give the Insurer notice, in writing, as soon as practicable 
of any Claim first made against the [Insureds] during 
the Policy Period, or Discovery Period (if applicable), but in no event later 
than ninety (90) days after the expiration of the Policy Period, or Discovery 
Period, and shall give the Insurer such information and cooperation as it may 
reasonably require.[5]
 
            
On November 28, 2001, FlashNet was named as a 
defendant in a class-action securities lawsuit (commonly referred to as the “IPO 
litigation”). The underlying FlashNet lawsuit 
constituted a “Securities Claim first made against [FlashNet]” “during the . . . Discovery Period” of the 
policy, as described in the insuring agreement added by Policy Endorsement 16. 
Prodigy was served with a copy of the complaint on June 20, 2002 and first 
notified AESIC of the FlashNet lawsuit in a letter 
dated June 6, 2003. Apparently assuming that AESIC was already aware of the 
underlying lawsuit, the June 6 letter requested AESIC’s consent to a proposed settlement agreement of the 
claims brought against FlashNet, rather than 
purporting to provide the initial notice of the claim.
            
By letter dated June 18, 2003, AESIC denied coverage on the ground that 
the June 6 letter did not comply with the policy’s notice requirements.[6] In response, Prodigy provided AESIC with 
formal written notice of the claim on June 26, 2003. Along with this notice, 
Prodigy attached a letter asserting that notice was timely because it had been 
sent within ninety days of the expiration of the Discovery Period. Despite 
Prodigy’s efforts, AESIC never retreated from its no 
coverage stance.
II
Procedural Background
 
            
Prodigy sued AESIC, seeking a declaration that Prodigy was contractually 
entitled to coverage. Prodigy also asserted several extra-contractual claims 
alleging, among other things, that AESIC violated certain Insurance Code 
provisions as an unauthorized surplus lines insurer and was thus liable to 
Prodigy for the full amount of coverage. AESIC moved for summary judgment 
arguing that Prodigy did not satisfy the policy’s condition precedent that 
notice of a claim be given “as soon as practicable.” Prodigy filed a 
cross-motion for summary judgment. The trial court denied Prodigy's motion and 
granted AESIC's motion in part, ruling that Prodigy 
failed to comply with the condition precedent of timely notice and that this 
failure “avoids coverage, with or without prejudice to AESIC.” AESIC and Great 
American Insurance Company then moved for summary judgment on the remaining 
Insurance Code issues, and the trial court granted a final summary judgment in 
their favor.
            
The court of appeals affirmed, holding that: (1) Prodigy was required to 
give notice “as soon as practicable,” even though the policy allowed notice 
within ninety days after the expiration of the discovery period; (2) notice 
given almost one year after the filing of the lawsuit against the insured was 
not “as soon as practicable” as a matter of law; (3) AESIC was not required to 
prove that it was prejudiced by Prodigy’s late notice; and (4) Insurance Code 
provisions did not prevent AESIC from enforcing the policy’s notice provision. 
195 S.W.3d 764, 766-69. Prodigy petitioned this court for review on 
the issues of late notice and Insurance Code violations. We granted the 
petition. 51 Tex. Sup. Ct. J. 292 (Jan. 14, 
2008).
III
Discussion
 
            
We must decide whether, under a claims-made policy, an insurer can 
deny coverage based on its insured’s alleged failure to comply with a policy 
provision requiring that notice of a claim be given “as soon as practicable,” 
when (1) notice of the claim was provided before the reporting deadline 
specified in the policy; and (2) the insurer was not prejudiced by the 
delay.
            
As noted earlier, we recently held in PAJ that an “insured’s 
failure to timely notify its insurer of a claim or suit does not defeat coverage 
if the insurer was not prejudiced by the delay.” 243 S.W.3d at 
636-37. In reaching that conclusion, we 
followed our holding in Hernandez that “an immaterial breach does not 
deprive the insurer of the benefit of the bargain and thus cannot relieve the 
insurer of the contractual coverage obligation.” PAJ, 243 S.W.3d 
at 631 (citing Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 
(Tex. 1994)). 
Prodigy argues that, even assuming it breached the policy’s requirement that 
notice of a claim must be given “as soon as practicable,” under our holding in 
PAJ, that breach was immaterial and cannot defeat coverage given AESIC’s admitted lack of prejudice. See id. AESIC responds that our holding in 
PAJ does not control the outcome of this case for several 
reasons.
            
First, unlike the PAJ policy, this one states unambiguously that 
the insured’s duty to give “notice, in writing, as soon as practicable” is a 
“condition precedent” to coverage. Importantly however, our holding in PAJ 
did not rest on the distinction between conditions and covenants. See 
id. at 633 (noting that in Hernandez “[w]ithout distinguishing between covenants and conditions or 
classifying the exclusion as one or the other, we concluded that the insured's 
breach of the settlement-without-consent provision was immaterial and thus the 
insurer could not avoid liability”) (citing Hernandez, 875 S.W.2d at 
693); see also id. at 633 n.2 (noting that “the courts in many of 
the cases we cited made no attempt to classify the policy provisions as either 
covenants or conditions, nor did they even employ those terms”). Instead, we 
followed our reasoning in Hernandez, where we applied 
“‘fundamental principle[s] of contract law,’” to hold “that when one party to a 
contract commits a material breach, the other party's performance is excused.” 
Id. at 633 
(quoting Hernandez, 875 
S.W.2d at 692). We noted that one consideration in determining 
the materiality of a breach is “‘the extent to which the nonbreaching party will be deprived of the benefit that it 
could have reasonably anticipated from full performance.’” Id. (quoting Hernandez, 
875 S.W.2d at 693 (citing Restatement (Second) of Contracts § 
241(a) (1981))). Thus, while 
the Prodigy policy describes the notice provision as a “condition precedent,” we 
must go further to determine whether prejudice is, or is not, 
required.
            
This brings us to AESIC’s second reason for 
distinguishing this case from PAJ. Unlike the occurrence-based policy in 
PAJ, the policy at issue here is a “claims-made” policy. According to 
AESIC, timely notice is always inherent to, and an essential part of, the 
bargained-for exchange in a claims-made policy. In PAJ, we recognized a 
“critical distinction” between the role of notice in claims-made policies and 
the role of notice in occurrence policies and concluded that timely notice was 
not an essential part of the bargained-for exchange in PAJ’s occurrence-based policy. 243 S.W.3d 
at 636. In reaching this conclusion, we were persuaded by the Fifth 
Circuit’s explanation that “‘[i]n the case of an 
“occurrence” policy, any notice requirement is subsidiary to the event that 
triggers coverage.’” Id. (quoting Matador Petroleum Corp. 
v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 658 (5th Cir. 
1999)).
            
To determine whether “notice as soon as practicable” is an essential part 
of the bargained-for exchange in the claims-made policy at issue here, it is 
helpful to review the basic distinctions between occurrence and claims-made 
policies and the different types of notice requirements associated with 
each.
            
As one treatise explains:
 
D&O 
insurance policies today are invariably written on a “claims-made” basis, which 
means that the policy only covers those claims first asserted against the 
insured during the policy period. This limitation appears in the insuring 
clauses. This coverage differs from “occurrence” type coverage, written for most 
casualty insurance, which covers only claims arising out of occurrences 
happening within the policy period, regardless of when the claim is made.
 
3 Rowland H. Long, The Law of Liability 
Insurance § 12A.05[3] (2006). Thus, the main 
difference between these two types of policies is that a “claims-made” policy 
provides unlimited retroactive coverage and no prospective coverage, while an 
“occurrence” policy provides unlimited prospective coverage and no retroactive 
coverage. 20 Eric Mills Holmes, Holmes’ 
Appleman on Insurance § 130.1(A)(1) (2d ed. 
2002) (“Holmes’ Appleman on Insurance 
2D”); see also 1 Lee R. 
Russ & Thomas F. Segalla, Couch on Insurance § 1.5 (3d ed. 2008) 
(“Couch on Insurance 3D”).
            
For the insurance company, the primary advantage of a claims-made policy 
“is the limitation of liability to claims asserted during the policy period.” 20 
Holmes’ Appleman on Insurance 2D 
§ 130.1(A)(1). This allows insurers “to 
calculate risks and premiums with greater precision.” Id. Furthermore, 
“the elimination of exposure to claims filed after the policy expiration date 
enables liability insurance companies to issue the claims made policies at 
reduced premiums.” Id.
            
Both occurrence policies and claims-made policies tend to have a 
requirement that notice of a claim be given to the insurer promptly, or “as soon 
as practicable.” See 13 Couch on 
Insurance 3D § 186:13; see also Chas. T. Main, Inc. v. 
Fireman's Fund Ins. Co., 551 N.E.2d 28, 29 (Mass. 1990). Unlike occurrence policies, 
however, some claims-made policies (often called “claims-made-and-reported 
policies) have an additional requirement that the claim be reported to the 
insurer within the policy period or within a specific number of days 
thereafter.[7] See, e.g., Burns v. Int’l Ins. 
Co., 929 F.2d 1422, 1423 (9th Cir. 1991) (claims to be reported within sixty 
days following policy termination); Zuckerman v. Nat’l Union Fire Ins. 
Co., 495 A.2d 395, 396-97 (N.J. 1985)(claims to be made against insured and 
reported to insurer during policy period).
            
As courts and commentators have recognized, the different kinds of notice 
requirements when found in a claims-made policy serve very different purposes.[8] See, e.g., 13 Couch on Insurance 3D § 186:13 
(“As a general statement, the prompt notice of claim requirement and the 
‘claims made’ within the policy period requirement serve such different 
purposes, and are of such different basic character, that the principles applied 
to one should have little or nothing to do with the principles applied to the 
other.”); Chas. T. Main, 551 N.E.2d at 29 (noting that “[t]he purposes of 
the two types of reporting requirements differ sharply”).
            
In a claims-made policy, the requirement that notice be given to the 
insurer “as soon as practicable” serves to “maximiz[e] 
the insurer's opportunity to investigate, set reserves, and control or 
participate in negotiations with the third party asserting the claim against the 
insured.” 13 Couch on Insurance 
3D § 186:13, see also Chas. T. Main, 551 N.E.2d at 29. By 
contrast, the requirement that the claim be made during the policy period “is 
directed to the temporal boundaries of the policy's basic coverage terms . . . . 
[This type of notice] is not simply part of the insured's duty to cooperate, but 
defines the limits of the insurer's obligation, and if there is no timely 
notice, there is no coverage.” 13 Couch 
on Insurance 3D § 186:13. Similarly, a notice provision requiring that a 
claim be reported to the insurer during the policy period or within a specific 
number of days thereafter “define[s] the scope of coverage by providing a 
certain date after which an insurer knows it is no longer liable under the 
policy.” Resolution Trust Corp. v. Ayo, 31 F.3d 
285, 289 (5th Cir. 1994); see also Chas. T. Main, 551 N.E.2d at 29-30 
(noting that “fairness in rate setting is the purpose of a requirement that 
notice of a claim be given within the policy period or shortly thereafter” and 
therefore this type of notice requirement “is of the essence in determining 
whether coverage exists” in a claims-made policy).[9]         
            
The role of notice in claims-made policies has been described as 
follows:
 
Claims 
made or discovery policies are essentially reporting policies. If the claim 
is reported to the insurer during the policy period, then the carrier is legally 
obligated to pay; if the claim is not reported during the policy period, no 
liability attaches. Claims made policies require notification to the insurer to 
be within a reasonable time. Critically, however, claims made policies 
require that that notice be given during the policy period itself.
 
20 Holmes’ Appleman on Insurance 2D § 
130.1(A)1 (emphasis added). Because the requirement that a claim 
be reported to the insurer during the policy period or within a specific number 
of days thereafter is considered essential to coverage under a 
claims-made-and-reported policy, most courts have found that an insurer need not 
demonstrate prejudice to deny coverage when an insured does not give notice of a 
claim within the policy’s specified time frame.[10]
            
In Main, the Supreme Judicial 
Court of Massachusetts noted the distinction between the “as soon as 
practicable” and “within the policy year” notice requirements and concluded 
that, in a claims-made policy, noncompliance with the latter would defeat 
coverage regardless of prejudice to the insured. 551 N.E.2d at 
30. The court explained:
 
The 
purpose of a claims-made policy is to minimize the time between the insured 
event and the payment. For that reason, the insured event is the claim being 
made against the insured during the policy period and the claim being reported 
to the insurer within that same period or a slightly extended, and specified, 
period. If a claim is made against an insured, but the insurer does not know 
about it until years later, the primary purpose of insuring claims rather than 
occurrences is frustrated. Accordingly, the requirement that notice of the claim 
be given in the policy period or shortly thereafter in the claims-made policy is 
of the essence in determining whether coverage exists. Prejudice for an untimely 
report in this instance is not an appropriate inquiry.
 
Id. The court then 
concluded that a statutory notice-prejudice requirement “applies only to the ‘as 
soon as practicable’ type of notice and not to the ‘within the policy year’ type 
of reporting requirement which is contained in the policy under review in this 
case and was not met.” Id.
            
Similarly, in T.H.E. Insurance Company v. P.T.P. 
Inc., 628 A.2d 223, 228 (Md. 1993), the Maryland Court of Appeals 
held that a statutory notice-prejudice requirement did not apply to the 
insurer’s denial of coverage under a claims-made policy for a claim made and 
reported after the policy had expired. The court emphasized that the insurer was 
not attempting to “deny coverage because of an alleged material failure to 
perform a covenant to give notice, or to satisfy a 
policy provision that might be phrased as a condition that must be satisfied to 
prevent the loss of coverage that otherwise would apply.” T.H.E. Ins. 
Co., 628 A.2d at 227. Rather, the 
court explained, the extended reporting period under the policy had expired 
before P.T.P. reported the claim, and therefore the notice-prejudice requirement 
“could no more revive the original policy to cover [the claim] than [it] could 
reopen an occurrence policy to embrace a claim based on an accident that 
happened after the end of the policy period.” Id. The court observed that the insurer 
would be required to demonstrate prejudice, however, to deny coverage based on 
the policy’s provision requiring the insured to give notice of a claim “‘as soon 
as practicable,’” assuming that the claim had been made and reported within the 
extended reporting period. Id. at 227 
n.7.
            
We agree with this analysis. In a claims-made policy, when an insured 
gives notice of a claim within the policy period or other specified reporting 
period, the insurer must show that the insured’s noncompliance with the policy’s 
“as soon as practicable” notice provision prejudiced the insurer before it may 
deny coverage. Here, it is undisputed that Prodigy gave notice of the FlashNet lawsuit before the ninety-day cutoff. Even assuming 
that Prodigy did not give notice “as soon as practicable,” AESIC was not denied 
the benefit of the claims-made nature of its policy as it could not “close its 
books” on the policy until ninety days after the discovery period expired. 
See F.D.I.C. v. Mijalis, 15 F.3d 1314, 1330 
(5th Cir. 1994) (noting that “the notice requirements in claims made policies 
allow the insurer to ‘close its books’ on a policy at its expiration and thus to 
‘attain a level of predictability unattainable under standard occurrence 
policies’”)(quoting Burns v. Int’l Ins. Co., 709 F. Supp. 187, 191 (N.D. 
Cal. 1989), aff'd, 929 F.2d 1422 (9th 
Cir.1991)); see also 20 Holmes’ 
Appleman on Insurance 2D § 130.1(A)1 (“The essence . . . of a 
claims made policy is notice to the insurance carrier within the insurance 
policy period.”) (emphasis added).
            
Accordingly, we conclude that Prodigy’s obligation to provide AESIC with 
notice of a claim “as soon as practicable” was not a material part of the 
bargained-for exchange under this claims-made policy. See 
Hernandez, 875 S.W.2d at 693 (“In determining the materiality of a 
breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it 
could have reasonably anticipated from full performance.”) (citing Restatement 
(Second) of Contracts § 241(a) (1981)). As AESIC has admitted that it was 
not prejudiced by the delay in receiving notice, it could not deny coverage 
based on Prodigy’s alleged failure to provide notice “as soon as practicable.” 
See PAJ, 243 S.W.3d at 636-37.
IV
Conclusion
 
            
In a claims-made policy, when an insured notifies its insurer of a claim 
within the policy term or other reporting period that the policy specifies, the 
insured’s failure to provide notice “as soon as practicable” will not defeat 
coverage in the absence of prejudice to the insurer.[11] Accordingly, we reverse the court of 
appeals’ judgment, render judgment that AESIC cannot deny coverage because of 
Prodigy’s alleged failure to give notice “as soon as practicable,” and remand 
the remaining issues to the trial court. Tex. R. App. P. 60.2(d).
 
            
___________________________________
            
Wallace B. Jefferson
            
Chief Justice
 
 
OPINION 
DELIVERED:         March 27, 
2009
 
 
 









[1] 
Respondent Great American Insurance Company’s Executive Liability Division was 
responsible for underwriting and claims administration of D&O policies 
issued by AESIC, including the one issued in this case.

[2] 
With respect to claims against FlashNet itself, 
coverage was provided solely by operation of Endorsement 16, which added the 
following insuring agreement: “if, during the Policy Period or the Discovery 
Period, any Securities Claim is first made against the Company for a Wrongful 
Act the Insurer will pay on behalf of the Company all Loss which the Company is 
legally obligated to pay.”

[3] 
As prominently stated on the declarations page, the policy “D[ID] NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND THOSE 
INSURED UNDER THE POLICY.” This is standard for D&O policies. See 3 
Rowland H. Long, The Law of Liability 
Insurance § 12A.05[1] (2006).

[4] 
The original “notice of claim” provision, found in section VII of the policy, 
required that the Insureds “as a condition precedent 
to their rights . . . give the Insurer notice . . . as soon as practicable . . . 
but in no event later than ninety (90) days after such Claim is made . . 
. .”

[5] 
As noted above, the Discovery Period expired on May 31, 2003. Thus, the notice 
provision required that notice of a claim be given “as soon as practicable . . 
., but in no event later than” August 29, 2003.

[6] 
AESIC’s letter stated in part:
 
As I advised you in telephone conversations on June 9, 
2003 and June 11, 2003, AESIC is not participating in the [IPO litigation] and 
has not signed the relevant agreements. I also advised you that AESIC had not 
received any written notice of any lawsuit involving FlashNet Communications, Inc. In fact, your June 6, 2003 
letter appears to be the first notice of this matter to AESIC. However, such 
notice was not in compliance with the [Policy’s requirements] (including Section 
VII) [“The Notice of Claim” provision], which are a condition precedent to any 
rights under the Policy. Furthermore, both the Policy Period and Discovery 
Period expired prior to your June 6, 2003 letter. Under the circumstances there 
is no coverage for this matter under the Policy.

[7] 
It should be noted that “[m]any courts fail to distinguish between claims-made 
and claims-made-and-reported policies, and simply speak in broad terms of 
‘claims-made’ policies.” Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1362 n.2 (R.I. 
1994). As one court has explained:
 
[T]he only true mark of a “claims made” [policy] is that 
it provides coverage for any claim first asserted against the insured during the 
policy period, regardless of when the incident giving rise to the claim 
occurred. Whether reporting to the insurer [i]s also a 
condition of coverage depends on the terms of the specific policy.
 
In this regard, there is a distinction between a “claims 
made” policy and a “claims made and reported” policy: “Whereas the former 
requires only that a claim be made within the policy period, the latter also 
requires that the claim be reported to the insurance company within the policy 
period.”
 
Jones v. Lexington Manor Nursing Ctr., L.L.C., 480 F. Supp. 2d 865, 868 (S.D. Miss. 
2006)(quoting Chicago Ins. Co. v. Western World 
Ins. Co., No. Civ.A. 3-96-CV-3179R., 1998 
WL 51363, at *3 (N.D. Tex. Jan. 23, 1998) (mem.)); 
see also Pension Trust Fund for Operating Eng’rs v. Federal Ins. Co., 307 F.3d 944, 955-56 & 
n.6 (9th Cir. 2002)(holding that claims-made policy that required insured to 
provide notice of claims “‘as soon as practicable’” but “did not require that 
the claims be reported within the policy period, or even within a specific 
number of days thereafter” could “[not] be treated as a claims-made-and-reported 
policy”); Textron, 639 A.2d at 1361 n.2 (noting that “[a]bsent a provision requiring notice within a set period after 
policy expiration, standard claims-made policies ‘implicitly allow * * * 
reporting of the claim to the insurer after the policy period, as long as it is 
within a reasonable time’”) (quoting 2 Rowland Long, The Law of Liability 
Insurance, § 12A.05[3A] at 40 (Supp. 1991)).
                
   
                
    Although Prodigy’s policy is labeled a “claims-made 
policy,” its requirement that notice of a claim be given “as soon as practicable 
during the Policy Period,. . . but in no event later 
than ninety (90) days after the expiration of the Policy Period, or Discovery 
Period” is characteristic of a “claims-made-and-reported policy”. See 3 
Rowland H. Long, The Law of Liability 
Insurance § 12A.05[3A] (2006) (“The distinction between ‘claims made’ and 
‘claims made and reported’ policies is not necessarily apparent on the face of 
the policies, since disclosure regulations generally require only that the 
legend ‘claims made’ be placed on the policy. The distinction is typically 
evident in the notice of claims provision of the policy.”).
 

[8] 
As one treatise notes:
 
Courts too often speak broadly of the [claims-made] 
policy's “notice requirement,” without specifying which requirement is at issue, 
and make broad pronouncements about the effect of noncompliance with the 
unspecified “notice requirement.” Alternatively, courts may speak in terms of 
the insured's “untimely notice,” and proceed to determine the effect of the 
untimeliness, without specifying which of the notice 
requirements is at issue.
 
13 Couch on 
Insurance 3D § 186:13.

[9] 
See also Nat’l Union Fire Ins. Co. of Pittsburgh, PA v. Willis, 
296 F.3d 336, 343 (5th Cir. 2002) (“The purpose of claims-made policies, 
unlike occurrence policies, is to provide exact notice periods that limit 
liability to a fixed period of time ‘after which an insurer knows it is no 
longer liable under the policy, and for this reason such reporting requirements 
are strictly construed.’”)(emphasis 
added)(quoting Resolution Trust Corp. v. Ayo, 
31 F.3d 285, 289 (5th Cir.1994)); F.D.I.C. v. Mijalis, 15 F.3d 1314, 1330 (5th Cir. 1994) (noting that 
“[t]he notice requirements in claims made policies allow the insurer to ‘close 
its books’ on a policy at its expiration and thus to ‘attain a level of 
predictability unattainable under standard occurrence policies’”) (quoting 
Burns v. Int’l Ins. Co., 709 F. Supp. 187, 191 (N.D. Cal. 1989), aff'd, 929 F.2d 1422 (9th Cir.1991)).
 

[10] See, e.g., Chas. T. Main, 
551 N.E.2d at 30; Matador Petroleum Corp., 174 F.3d at 656, 658; 
Lexington Ins. Co. v. St. Louis Univ., 88 F.3d 632, 634-35 (8th 
Cir. 1996)(where claims-made policy provided that the insured “‘shall give’ 
[insurer] notice of each claim ‘as soon as practicable,’ and in any event, 
‘during the period of this Policy,’” insurer “need not prove prejudice to 
deny coverage if the [insured] failed to report the [claim] within the policy 
term”)(emphasis added); DiLuglio v. New 
England Ins. Co., 959 F.2d 355, 356, 359 (1st Cir. 1992) (where policy 
provided that insurance company would pay “‘any claim or claims ... first made 
against the Insured and reported to the Company during the policy period’” 
“prejudice may be presumed where notice is not provided within the policy 
period”)(emphasis added); Nat’l Union Fire Ins. Co. v. Talcott, 931 F.2d 166, 168 (1st Cir. 1991) (same); 
Burns v. Int’l Ins. Co., 929 F.2d 1422, 1423-25 (9th Cir. 1991) 
(notice-prejudice rule did not apply to claims-made policy that covered “claims 
made against the insureds during the policy period . . 
. notice of which claim is received by the company within sixty days following 
the termination of the policy period”); Esmailzadeh 
v. Johnson and Speakman, 869 F.2d 422, 424 (8th 
Cir. 1989); Zuckerman v. Nat’l Union Fire Ins. Co., 495 A.2d 395, 396-97, 
405-06 (N.J. 1985) (where policy covered “claims first made against the insured 
and reported to the [Insurer] during the policy period” insurer was not required 
to demonstrate prejudice to deny coverage based on notice given ten months after 
policy expired).

[11] Because we hold that AESIC cannot deny 
Prodigy coverage for the FlashNet claim, we do we do 
not consider Prodigy’s contention that AESIC was precluded from enforcing the 
notice provision because the policy was sold in violation of the surplus lines 
statute.