James K. **BURNS**; Patricia Ross; Walter H. Ratcliff, Plaintiffs–Appellants,

v.

**INTERNATIONAL INSURANCE CO.;
Crum & Forster,**
Defendants–Appellees.

No. 89–15473.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1990.

Decided April 2, 1991.

Timothy F. Perry, Khourie, Crew & Jaeger, San Francisco, Cal., John Banker, Tiburon, Cal., and Patricia Nichols, Oakland, Cal., for plaintiffs-appellants.

Harry W.R. Chamberlain, II, Musick, Peeler & Garrett, Los Angeles, Cal., and Louis G. Corsi, Siff, Rosen & Parker, New York City, for defendants-appellees.

Before TANG and BEEZER, Circuit Judges, and STEPHENS, District Judge.

BEEZER, Circuit Judge:

Plaintiffs, officers and directors of Centennial Savings and Loan Association, were sued in state and federal court for alleged

professional misconduct. Defendants, International Insurance Company and Crum and Forster, refused to cover plaintiffs in these actions under a professional liability policy between them. In the present action, plaintiffs sought a judgment declaring that defendants owed them coverage under the policy. The district court granted summary judgment in favor of defendants. We affirm.

## I

Plaintiffs James K. Burns, Patricia Ross, and Walter H. Ratcliff are former officers and directors of Centennial Savings and Loan Association ("Centennial"), a now bankrupt California corporation. Defendant International Insurance Company ("International") is an Illinois insurance corporation. Defendant Crum and Forster is an underwriting corporation, not a party to this appeal.

Plaintiffs purchased professional liability insurance from International for the period March 3, 1982 through March 3, 1985. Under this agreement the insurer agreed to pay, up to the policy limits,

> on behalf of the insureds all loss which the insureds shall become legally obligated to pay for any claim or claims made against the insureds during the policy period because of a wrongful act, notice of which claim is received by the company within sixty days following the termination of the policy period.[1]

This policy provides that the insurer's duties arise

> [i]f during the policy period:
> (i) the insureds or any of them shall receive written or oral notice from any party that it is the intention of such party to hold the insureds responsible for the results of any specified wrongful act done or alleged to have been done by the insureds while acting in an insured capacity, and shall during the policy period give notice in writing to the [insurance] company of such oral or written notice received, ...;

(ii) the insureds or any of them shall become aware of any event or circumstance which may subsequently give rise to a claim being made against the insureds in respect of such alleged wrongful act, and shall during the policy period give written notice to the company.... 

This notice provision is a "condition precedent to the insured's right of coverage under the policy."

Centennial and its officers and directors came under the examination of the Federal Home Loan Bank Board ("FHLBB") beginning in 1983 because of various banking regulation violations. The FHLBB gave Centennial notice of the practices that caused concern. However, in a 1984 examination, the operations of the bank were still found to be in violation. In particular, Centennial was found to be overlending in general, overlending to individual borrowers, and lending to interested borrowers.

On August 30, 1984, the Federal Savings and Loan Insurance Corporation ("FSLIC") and Centennial came to an agreement under which FSLIC would not begin formal proceedings against the bank in exchange for the cooperation of the bank in desisting such practices. As part of this agreement, the officers and directors admitted the above-mentioned violations. Centennial did not notify International of these investigations, or of this agreement. According to the record, the defendants' first notice came in a letter from FHLBB to defendants, dated August 20, 1985.

In September, 1985, FHLBB declared Centennial bankrupt. In response, a number of shareholder derivative lawsuits were filed against Centennial and its officers. In September, 1987, FSLIC filed suit against Centennial and its officers. Plaintiffs notified defendants promptly of each action, but defendants refused coverage.

Plaintiffs brought this action against International and Crum and Forster seeking a declaration that defendants owed Centennial coverage under the policy. The district court, in an opinion reported at 709 F.Supp. 187 (N.D.Cal.1989), granted sum-

---

1. This requires that notice be provided to the insurer on or before May 2, 1985.

mary judgment for International.[2] The court held that even though events and circumstances that could have led to a claim against the plaintiffs occurred during the policy period, plaintiffs had not given International timely notice, as required by the terms of the policy.

## II

We review a grant of summary judgment de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Where a federal court has jurisdiction by virtue of diversity of citizenship of the parties, the court must follow state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The parties agree that California law is the governing substantive law. Questions of state law are reviewed de novo. *Churchill v. F/V Fjord (Matter of McLinn)*, 739 F.2d 1395, 1397 (9th Cir. 1984) (en banc).

In the present case, the parties agree that the policy at issue is a claims-made policy,[3] and that the insurer is only responsible for claims made during the term of the policy or resulting from events or circumstances that could lead to a claim, concerning which the insurer is notified within the term of the policy plus sixty days.[4] The parties also agree that the insured did not provide notice to the insurer within the described notice period.

█ Plaintiffs argue that the district court erred in its determination that they were precluded from coverage under the insurance policy. They claim that, despite the fact that they did not comply with the notice provisions of the policy, they should nonetheless receive coverage because, as a matter of public policy, California has adopted the notice-prejudice rule. The notice-prejudice rule provides that the breach of a policy provision by an insured cannot provide a valid defense to the insurer unless the insurer substantially was prejudiced by the breach.

The California Supreme Court has not decided whether the notice-prejudice rule applies to claims-made insurance policies in California. In the absence of California Supreme Court precedent, we must resort to other authority and exercise our own best judgment in determining how that court would resolve the issue. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986).

The district court held that the notice-prejudice rule should not apply to claims-made policies. In doing so, the court relied upon policy arguments, jurisprudence from outside California, and *Brown–Spaulding & Assocs. v. International Surplus Lines Ins. Co.*, 206 Cal.App.3d 1441, 254 Cal.Rptr. 192 (1988), *rev. denied and op. withdrawn*, (Cal.S.Ct., March 16, 1989).

█ In the absence of a supreme court decision on the subject in question, we look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law. *Dimidowich*, 803 F.2d at 1482. Decisions by the state courts of appeals provide guidance and instruction and are not to be disregarded in the absence of convincing indications that the state supreme court would hold otherwise. *Id.*

In California, it is clear that the notice-prejudice rule applies to occurrence policies. *See, e.g., Campbell v. Allstate Ins.*

---

**2.** In addition, the district court dismissed all claims against Crum and Forster. Plaintiffs have not appealed the dismissal of those claims.

**3.** Under a "claims-made policy," an insurer is responsible for any loss resulting from claims made during the policy period. Under the traditional "occurrence policy," an insurer is responsible for any loss resulting from acts that occur during the policy period. The insurer and the insured clearly may limit policy coverage in this way. *See National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 386, 131 Cal.Rptr. 42, 46, 551 P.2d

362, 366 (1976) (insurance company has right to limit coverage of policies it issues).

**4.** The district court found that the Supervisory Agreement between Centennial and FHLBB and the correspondence represented a circumstance that might subsequently give rise to a claim that would lead to coverage under the policy under section VII(A)(ii). Appellees do not dispute this analysis. Appellants argue that these events themselves constitute a claim. We reserve comment because this argument does not affect the outcome on appeal.

*Co.,* 60 Cal.2d 303, 305–06, 32 Cal.Rptr. 827, 828, 384 P.2d 155, 156 (1963). Authorities in California are split, however, as to whether the notice-prejudice rule applies to claims-made policies. In *Northwestern Title Security Co. v. Flack,* 6 Cal.App.3d 134, 85 Cal.Rptr. 693 (1970), the California Court of Appeal for the First District held that the notice-prejudice rule applies to claims-made policies. More recently, the Court of Appeal for the Second District reached the opposite conclusion. *See Pacific Employers Ins. Co. v. Superior Ct.,* 221 Cal.App.3d 1348, 1358–59, 270 Cal.Rptr. 779, 784 (1990). Because these are decisions from different districts of the Court of Appeal, neither is binding on the other. 9 B. Witkin, *California Procedure,* Appeal § 772 (3d ed. 1985); *see, e.g., Bridges v. Bridges,* 82 Cal.App.3d 976, 977–78, 147 Cal.Rptr. 471, 472 (1978).

For two reasons, however, we believe the California Supreme Court would agree with the Second District that the notice-prejudice rule does not apply to claims-made policies.

First, the California Supreme Court denied a request to review *Pacific Employers* on October 17, 1990. Although denial of review "is not to be regarded as expressing approval of the propositions set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of [the California Supreme Court, ...] it does not follow that such a denial is without significance as to [the] views [of that court]." *Di Genova v. State Bd. of Educ.,* 57 Cal.2d 167, 178, 18 Cal.Rptr. 369, 375, 367 P.2d 865, 871 (1962) (citations omitted). Thus, the denial provides some indication that *Pacific Employers* was decided correctly. *Id.*

Second, we note, as did the Court of Appeal in *Pacific Employers,* that the distinction between the two kinds of policies is critical. A claims-made policy reduces the potential exposure of the insurer and is therefore less expensive to the insured. To apply the notice-prejudice rule to a claims-made policy would be to rewrite the policy, extending the policy's coverage at no cost to the insured.

The district court held that the notice-prejudice rule does not apply to a claims-made policy in California. We believe the California Supreme Court would reach the same conclusion. Therefore, we affirm.

AFFIRMED.